MAY TERM,
1839.

Amonett
v.
Nicholas.

---

## Amonett v. Nicholas.

A justice of the peace has no power to issue an execution against an individual as bail of another, against whom there was an unsatisfied judgment on the docket of the justice, merely because the former had promised to become bail, or because he considered himself bound for the amount of the judgment and costs.

ERROR to the circuit court of Washington county.

*Frissell*, counsel for plaintiff in error:

The following points are insisted upon by the plaintiff in error:

1. That the injunction was improvidently granted in the first instance, the bill not disclosing sufficient grounds for the interposition of a court of chancery.

2. The bill does not state that any application had been made to the justice to quash the execution prayed to be enjoined.

3. That the demurrer to the bill ought to have been sustained.

4. That all errors and irregularities not of such a nature as to render the proceedings complained of a nullity, are cured by granting the injunction—Stat. of Mo. p. 314, sec. 10; Chouteau v. Douchequette, 1 Mo. Rep. 715.

5. That the proceedings before the justice were merely erroneous, not void—Voorhees v. Bank of U. S. 10 Pet. 448, 74.

6. That the suit being brought in the name of the firm, after the death of one of the parties, instead of being brought in the name of the surviving partner, is a matter to be plead in abatement, and cannot be taken advantage of in arrest of judgment, nor by writ of error, unless such plea be put in and overruled—Holmes & Drake v. Decamp, 1 John. Rep. 34; 1 Chit. Plead. 12.

7. That the stays not being granted within the five days after the judgment, is not material, because the stay

was granted by the *consent of the plaintiff*, he must be considered as having waived the benefit of the provision, and neither the bail nor the defendant can take any advantage of that fact.

8. That the stay law being unconstitutional, where it delays plaintiff against his consent, reduces the whole matter of staying judgments to a mere matter of contract between the parties.

9. That Nicholas writing to the justice to consider him special bail for Peterson, was as binding upon Nicholas as though he had entered into the recognizance in the form prescribed by the statute.

10. That Nicholas having received of Peterson sufficient property to indemnify him in case he had the debt to pay, renders any attempt of Nicholas to rid himself of the responsibility, dishonest and fraudulent.

*Brickey*, counsel for defendant in error:

1. Was the defendant in error, Nicholas, bound as the bail or security of Peterson, for the stay of execution, when he never did sign the bond or recognizance before the justice?—Rev. Code, 363, sec. 13, 14.

2. If Nicholas was not bound by the recognizance in the first instance, could he become so by any verbal statement subsequently made?—Rev. Code, 117, sec. 1, title "Contracts and Promises."

3. The magistrate had no lawful right to recall the execution issued by him in favor of Watson & Amonett, until Peterson had *given bail as required by law.*

4. See Rev. Code, 313, sec. 1 and 2, as to the power of county courts to grant injunctions.

NAPTON, Judge, delivered the opinion of the court.

The bill of exceptions in this case discloses the following state of facts: Amonett obtained a judgment before a justice of the peace against one Sterling Peterson for one hundred and thirty dollars, or thereabouts. Peterson applied for a stay of execution, assuring the justice that the defendant, Nicholas, would become his bail, and accordingly, shortly afterwards, produced a letter from Nicholas, stating that he (Nicholas) would "enter himself as special bail" in the case of Amonett against Peterson. The stay was granted, and the justice afterwards inquired of defendant whether he considered himself bound for the principal, interest, and cost, on the judgment against Peterson, to which his reply was, that

he did. It does not appear by the record or evidence that any application had been made to the justice who had issued the execution, to have the same quashed, or for any other relief. One of the witnesses proved that Nicholas, in a conversation with witness, said that he had become special bail, and he thought that Peterson had secured him (Nicholas) by giving him a wagon and team of oxen. No recognizance was entered into by Nicholas, but upon his verbal and written assurance of his willingness to become bail, or his belief that he was bail, the justice issued his execution against him as bail. Defendant applied to two justices of the county court for an injunction, which was granted, and the injunction was made perpetual by the circuit court. To reverse the decree of the circuit court, this writ of error is brought.

The circuit court was clearly right in making the injunction perpetual. Whatever may be the liability of the defendant, either in law or equity, on his promise, the justice had no power to enforce that liability by execution.

The statute points out the mode of staying an execution, and the form of the recognizance which must be entered into—Rev. Code of 1836, p. 364. What right had the justice to issue an execution against defendant as bail, merely because he had promised to become bail, or because he considered himself as bail? The judgment of the circuit court is affirmed.

MAY TERM, 1839.

Amonett
v.
Nicholas.

A justice of the peace has no power to issue an execution against an individual as bail of another, against whom there was an unsatisfied judgment on the docket of the justice, merely because the former had promised to become bail, or because he considered himself bound for the amount of the judgment and costs.